REBECCA KRAVIS, TRADING AS THE PADDOCK INTERNATIONAL, PETITIONER, v. ERWIN B. HOCK, COMMISSIONER OF THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, RESPONDENT.

Argued May 7, 1948—Decided June 9, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the petitioner, *Emerson Richards.*

For the respondent, *Waller D. Van Riper,* Attorney-General (by *Samuel B. Helfand,* Deputy Attorney-General).

The opinion of the court was delivered by

EASTWOOD, J.   Disciplinary proceedings were instituted by respondent, Commissioner of the Department of Alcoholic Beverage Control, against the petitioner, holder of Plenary Retail Consumption License C-106, issued to her by the Board of Commissioners of the City of Atlantic City, for premises 1643 Atlantic Avenue, Atlantic City, New Jersey. As the result of a hearing of the charges, the Commissioner made an order on April 20th, 1948, revoking the license in question, effective immediately.   Upon application to this court an order to show cause why *certiorari* should not issue was granted, and it was provided therein that the order of April 20th, 1948, be stayed and suspended pending the further order of this court.

As the bases of the order of revocation the Commissioner assigned three violations of the Alcoholic Beverage Control Law on the part of the petitioner licensee, viz.:  (1) Petitioner unlawfully allowed, permitted and suffered females employed on her premises to accept beverages at the expense of and as gifts from customers and patrons in violation of Rule 22 of State Regulations No. 20;  (2) Petitioner knowingly employed and had connected with her in a business capacity one Edward Kravis, a person who would fail to qualify as a licensee under the provisions of *R. S.* 33:1–1, *et seq.,* and (3) Petitioner knowingly employed and had connected with her in a business capacity said Edward Kravis, who had been convicted of a crime involving moral turpitude, in violation of Rule 1 of State Regulations No. 13.

The petitioner pleaded not guilty to the foregoing charges and as a result of said hearing thereon, she was found guilty as charged, with consequent revocation of the plenary retail consumption license in question.

We have carefully reviewed the testimony taken before the Hearer Edward F. Hodges, on behalf of the Commissioner

of the Department of Alcoholic Beverage Control, as well as the conclusions of said Commissioner and his findings of facts set forth therein. The Commissioner determined that it had been established by the evidence that certain females who had been secured by the petitioner through the services of a New York theatrical agency and who had appeared in a show running on the petitioner's premises during the month of November, 1947, had on the several dates mentioned in the charges accepted alcoholic drinks in the petitioner's barroom at the expense of and as gifts from various customers and patrons; that Edward Kravis, a son of the petitioner, had been knowingly employed and connected with the licensed business in violation of *R. S.* 33 :1–1, *et seq.,* having been previously convicted on December 10th, 1943, of the crime of aiding and abetting in lewd entertainment, a crime involving moral turpitude at the licensed premises. We conclude that there was ample evidence to justify said conviction by the Commissioner. Under the disciplinary proceedings instituted against petitioner, to justify her conviction, respondent was only required to establish the truth of said charges by a preponderance of the believable evidence and not to prove her guilt beyond a reasonable doubt. Such proceedings are civil in nature and not criminal. *Grant Lunch Corp.* v. *Driscoll,* 129 *N. J. L.* 408; *affirmed,* 130 *Id.* 554; *certiorari* denied, 320 *U. S.* 801; *The Panda* v. *Driscoll* (*Court of Errors and Appeals*), 135 *N. J. L.* 164; *Commonwealth* v. *Lyons,* 142 *Pa. Super.* 54; 15 *Atl. Rep.* (*2d*) 851.

Petitioner contends that her conviction should be reversed on the ground that the female entertainers, allegedly treated to drinks, were not employees of the licensee; that they were "independent contractors," having been furnished through a theatrical agency in New York. We think this argument is besides the point and specious. Rule 22 of State Regulations No. 20 provides:

"No plenary or seasonal retail consumption licensee shall allow, permit or suffer any female employed on the licensed premises to accept any food or beverage, alcoholic or otherwise, at the expense of or as a gift from any customer or patron."

It will be observed that said regulation only makes it necessary to prove that the females are "employed on the licensed premises." To sustain a conviction for a violation of that regulation it is immaterial whether said females were in the employ of the licensee or were independent contractors. The only issue is: were they employed on the licensed premises and, while so employed, did they accept any drinks as gifts from any customer or patron of the licensee? Webster defines the word "employ:" "To use; to have in service; to cause to be engaged in doing something; to make use of as an instrument, a means, a material, etc., for a specific purpose." The Commissioner, since the adoption of this regulation in November, 1940, has consistently construed the word "employed" as used in said regulation to embrace "all persons whose services are utilized in furtherance of the licensed business notwithstanding the absence of a technical employer-employee relationship." Such a construction seems to be a logical one. Our courts have held that administrative interpretations of long standing given a statute by the official charged with its enforcement will not be lightly disturbed by the courts. Mr. Justice Perskie has emphasized this judicial determination in *Cino* v. *Driscoll* (*Supreme Court,* 1943), 130 *N. J. L.* 535, 540, where he said:

"Moreover, the legislature charged with the knowledge of the construction placed upon the Alcoholic Beverage Law, as evidenced by these rules, has done nothing to indicate its disapproval thereof. *Cf. Young* v. *Civil Service Commissioner,* 127 *N. J. L.* 329; 22 *Atl. Rep.* (*2d*) 523. The contemporaneous construction thus given to a law of the state for over a decade is necessarily respected by us. *State* v. *Kelsey,* 44 *N. J. L.* 1; *Graves* v. *State,* 45 *Id.* 203; *affirmed, Id.* 347; *Central Railroad Co.* v. *Martin,* 114 *Id.* 69, 80; 175 *Atl. Rep.* 637; *Burlington County* v. *Martin,* 128 *N. J. L.* 203; 28 *Atl. Rep.* (*2d*) 116; *Martini* v. *Civil Service Commission,* 129 *N. J. L.* 599, 603; 30 *Atl. Rep.* (*2d*) 569."

We cannot agree with petitioner's argument that said female entertainers were not within the intendment of the regulation alleged to have been violated by her. The facts here support the Commissioner's finding on this point and we concur therein.

With respect to the conviction of petitioner on the charge of unlawful employment of Edward Kravis, previously convicted of a criminal offense involving moral turpitude, we hold that there was sufficient evidence to support that charge.

The record of the licensed premises is not an admirable one. Edward Kravis was the original licensee. While he was the licensee his license was suspended by the local issuing authority on three occasions. In December, 1939, he received a ten-day suspension for permitting a lewd performance on his licensed premises. In August, 1943, he received a ninety-day suspension on a similar charge. In November, 1943, he received a thirty-day suspension for permitting disturbances and unnecessary noises on his premises. On June 8th, 1944, Edward Kravis transferred the license to his mother, Rebecca Kravis. After petitioner became the licensee, her license was suspended for five days in March, 1945, for selling alcoholic beverages to minors and suspended by the Commissioner for ninety days on June 25th, 1946, after she had pleaded *non vult* to a charge alleging that she possessed three bottles containing alcoholic beverages not genuine as labeled. After the latter violation the Commissioner, although he stated the license might well be revoked outright, felt constrained to give the defendant, who had then held the license for only two years, one further opportunity to demonstrate her fitness to operate a licensed business, and concluded with the appropriate warning that any further violation would result in a complete deprivation of her license privileges. Our review of the case leads us to conclude that petitioner flaunted the Commissioner's warning and merits the fate that has befallen her.

The order to show cause will be discharged and the stay therein dissolved. The application for a writ of *certiorari* will be denied, with costs.