40 N.J. Super. 501 (1956)
123 A.2d 574
FRANK E. HORNAUER, T/A BLUE ROOF RESTAURANT, APPELLANT,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, RESPONDENT. GEORGE E. NEULS, T/A RIVER VIEW INN, APPELLANT,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1956.
Decided June 27, 1956.
*502 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Edward E. Stover argued the cause for both appellants (Mr. Archie Roth, on the brief).
Mr. Samuel B. Helfand, Deputy Attorney-General argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, attorney).
*503 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
These appeals seek review of the determination of the Director of the Division of Alcoholic Beverage Control suspending appellants' liquor licenses upon finding them guilty of the sale and service of alcoholic beverages to a 15-year-old girl who, together with two adult male companions, visited both taverns on Sunday, July 24, 1955. Suspensions entered against two other licensees (Hempel and Baer, t/a Mansfield Inn, and Landzberger t/a Al King's Bar & Grill), whose taverns were likewise visited by the trio on the same day, have not been appealed. A charge brought against one Schureman, t/a Cedar Castle, for sale and service of alcoholic beverages to the minor, was dismissed after hearing, for lack of proof. The facts concerning the other proceedings mentioned have been stipulated of record.
This court granted a stay of the suspensions pending appeal. Permission to file a consolidated brief was granted the Division by orders duly entered.
Appellants' major contention is that the proofs fail to support the charges by a fair preponderance of the believable evidence. This is the standard which guides the Director in measuring the adequacy of proof to sustain guilt in disciplinary proceedings instituted against licensees for violation of the statute or a Division regulation. Kravis v. Hock, 137 N.J.L. 252, 254 (Sup. Ct. 1948). On appeal our approach to the record is from a different direction. As respondent correctly notes, the futility of projecting for appellate review contentions relating to the preponderance of the evidence given before administrative agencies has become so increasingly manifest that documented support for their rejection would appear superfluous. In his analysis of developments in administrative law written for the 1946 Annual Survey of American Law (N.Y.U. School of Law), 187, 229, by Chief Justice Vanderbilt shortly before coming to the bench, he said:
"The scope of judicial review upon findings of fact continues to be narrowly limited. The substantial evidence rule is applied *504 rigorously in literally hundreds of cases and has become so well established in the federal courts and in many of the state courts that detailed reference to all of the many cases would serve no useful purpose. The courts continue to apply the usual corollaries to the rule, i.e., that it is the function of the administrative agency and not the courts to weigh the evidence, to determine the credibility of witnesses, to draw inferences and conclusions from the evidence, and to resolve conflicts therein."
The now generally accepted gauge of administrative factual finality is whether the factual findings are supported by substantial evidence. In re Larsen, 17 N.J. Super. 564, 576 (App. Div. 1952). In every case in which this court has been requested to resolve conflicting evidence, independently of the factual conclusion of the respondent agency, it has declined to do so. Passarella v. Board of Commissioners, 1 N.J. Super. 313, 321 (App. Div. 1949); Traymore of Atlantic City, Inc., v. Hock, 9 N.J. Super. 47, 48 (App. Div. 1950); In re Schneider, 12 N.J. Super. 449, 454 (App. Div. 1951); In re Larsen, above, 17 N.J. Super., at pages 573, 576-577 (App. Div. 1952); In re Gutman, 21 N.J. Super. 579, 581, 582 (App. Div. 1952); Mazza v. Cavicchia, 28 N.J. Super. 280, 289 (App. Div. 1953), reversed on another ground, 15 N.J. 498 (1954); Mitchell v. Cavicchia, 29 N.J. Super. 11, 13-14 (App. Div. 1953); Benedetti v. Board of Commissioners of City of Trenton, 35 N.J. Super. 30, 34 (App. Div. 1955); cf. New Jersey Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 378 (1950). Cf. also, Senate Bill No. 42, 1956 session of the New Jersey Legislature, section 7, which embodies the substantial evidence rule in reviews of administrative agency action; Sanders v. Director, Division of Taxation, etc., 40 N.J. Super. 477 (App. Div. 1956).
The reason for this exercise of judicial restraint is that otherwise the agency "would be reduced to the status of a mere conduit for the transmission of evidence to the courts." Mazza v. Cavicchia, above, 28 N.J. Super., at page 289; and see In re Larsen, above, 17 N.J. Super., at page 571. Justice (then Judge) Brennan, in his concurring opinion in the Larsen case, though critical of the merger of functions *505 reposed in the Division, expressed his view of the appellate power of reviewing the facts under then Rule 3:81-13 (now R.R. 4:88-13) (cf. R.R. 1:5-4(b), 2:5), thus:
"We should be cautious in invoking the power at least when dealing, as here, with the fact finding of an experienced agency of demonstrated competence. Cf. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943). We should appreciate the undesirability of trying cases de novo from such an agency and of the value of having the agency assume a real responsibility for weighing and considering the facts in a field where it has considerable experience." 17 N.J. Super., at pages 577-578.
See In re Gutman, above, 21 N.J. Super., at pages 581-582.
The case of Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), is generally looked to as authoritatively furnishing the conventional formula for judicial application of the substantial evidence rule: "`It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' * * * `[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.'" 340 U.S., at page 477, 71 S.Ct., at page 459. Stating that the rule was not intended to negative the function of the Labor Board as one of those agencies "presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect," the opinion continues:
"* * * Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." 340 U.S., at page 488, 71 S.Ct., at page 465.
To similar effect, see New Jersey Bell Tel. Co. v. Communications Workers, etc., above, 5 N.J., at pages 377-379.
In his comprehensive article, "`Substantial Evidence' in Administrative Law," 89 U. of Pa. L. Rev. 1026, 1038 *506 (1941), Dean Stason of the University of Michigan Law School finds the most acceptable meaning of the term "substantial evidence" to be that which confers finality upon an administrative decision on the facts, "when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, might have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, could not have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be set aside. In effect, this is the prevailing rule in jury trials relative to the direction of verdicts, and is also the prevailing rule applied by appellate courts in setting aside jury verdicts because contrary to the evidence." And see Stern, "Review of Findings of Administrators, Judges and Juries: A Comparative Analysis," 58 Harv. L. Rev. 70, 89 (1944).
The choice of accepting or rejecting the testimony of witnesses rests, therefore, with the administrative agency. Where such choice is reasonably made, it is conclusive on appeal. The scope of appellate review does not possess such breadth as would permit a disturbance of the administrative finding unless the court is convinced that the evidence permits of no reasonable latitude of choice. The court canvasses the record, not to balance the persuasiveness of the evidence on one side as against the other, but in order to determine whether a reasonable mind might accept the evidence as adequate to support the conclusion and, if so, to sustain it.
Tested by these considerations, it cannot be said that the proofs in either of the cases before us were insufficient to sustain the findings of the Director, whatever the members of this court as individuals might conclude as to whether a fair preponderance of the credible evidence indicated the guilt or innocence of the respective appellants. In each case the girl unequivocally testified that beer had been served to and consumed by her, and she identified the person making the service. Her male companions corroborated the service *507 of beer to, and its consumption by, the minor. The defense in the Hornauer case was that the girl was served only orange soda. In the Neuls case the defense was that neither she nor her companions visited River View Inn on the Sunday in question. The testimony was in direct conflict, thus posing fact issues on which fair-minded judges, as respondent readily admits, could reasonably find the persuasive balance tilting in either direction. In such posture, the determination made in each case by the Director, exclusively entrusted as trier of the facts with the duty of determining in which direction the evidence preponderates, is conclusive on review. We cannot, in the words of Dean Stason, say that "a reasonable man, acting reasonably, could not have reached the decision from the evidence and its inferences."
Appellants make a special point of the minor's repudiation of her prior written statement in the Schureman case that she had been served beer in his tavern, resulting in the dismissal of the charge brought against him for selling alcoholic beverages to a minor; and also of her unsworn retraction directed to all four taverns visited on the day in question  Hornauer, Neuls, Hempel and Landzberger. The Director of the Division gave due consideration to these elements in the proof. Although the girl frankly admitted that she had been mistaken in saying she had visited the Schureman tavern, she and her male companions were firm in their testimony that she had been served and had consumed beer in the four other taverns, without any inquiry as to her age on the part of anyone connected with the operation or management of the bar. As a matter of fact, there were signed statements by the owners in the Hempel and the Landzberger cases admitting service of beer to the girl on July 24, 1955, and in each of those cases the Director found the licensees guilty.
Appellants suggest that a de novo judicial review of the evidence is warranted because the hearings were conducted before a hearer, so that the Director had no opportunity for personal observation of the witnesses. This very contention was rejected by this court in Mazza v. Cavicchia, 28 N.J. *508 Super. 280, 289 (App. Div. 1953), reversed on another ground, 15 N.J. 498 (1954). Commenting upon the reach of appellate review under R.R. 1:5-3 (now R.R. 1:5-4(b)) and R.R. 2:5, the court stated:
"* * * So it is said that a more compelling reason for restudy of the weight of the evidence exists here because the Director neither heard nor saw the witnesses. Despite this lack, which is not an uncommon one in modern administrative procedure, the test, which has judicial sanction for general application to the review of an administrative tribunal's decision, is whether the factual finding, out of which it arose, is supported by substantial evidence. [Citations omitted] In our judgment, this test is a sound one and the caution above referred to [in exercising the authority given this court to make an independent determination of the facts] does not mean a departure therefrom. It signifies the care that will be exercised by the courts in determining whether the record provides substantial evidence of the licensee's guilt."
Each appellant makes the additional point that he was prejudiced by the refusal of the hearer to permit further exploration of the credibility to be accorded the testimony of one of the two men who accompanied the minor, by interrogating him as to the nature of the crime after he had admitted having been convicted of a crime. Counsel for the licensees was technically entitled to go into the matter. State v. Tune, 17 N.J. 100, 110-111 (1954). However, appellants do not particularize their claim of prejudice and have not demonstrated in what manner the ruling of the hearer was prejudicial. Conviction of a crime, regardless of its nature, is in and of itself evidence reflecting adversely upon the credibility of a witness. N.J.S. 2A:81-12. It is to be presumed that this circumstance was given due weight by the Director. While the Tune case indicates that the question put to the witness was permissible, it does not hold, nor does it necessarily follow, that its exclusion is tantamount to prejudicial error.
R.R. 1:5-3(b) provides that "Neither error in the admission or the exclusion of evidence, nor error in any ruling or order or in any action taken or omitted by * * * any administrative agency * * *, nor any other matter, *509 whether or not involving the exercise of discretion, shall constitute ground for * * * disturbing a * * * determination, unless a denial of the relief sought appears to the court to be inconsistent with substantial justice." In construing this rule it has been held that "Even if there was error but it was not prejudicial, the verdict would not be disturbed." Miller v. Trans Oil Co., 18 N.J. 407, 414 (1955). Especially is this true of alleged error by an administrative agency, cf. Pennsylvania Railroad Co. v. Department of Public Utilities, 14 N.J. 411, 427-428 (1954), since its action "should not be subjected to the same close and technical scrutiny as is frequently applied in reviewing the judgment of a court." Middleton v. Division of the New Jersey Real Estate Commission, etc., 39 N.J. Super. 214, 219 (App. Div. 1956). And see Dutcher v. Department of Civil Service, 7 N.J. Super. 156, 163-164 (App. Div. 1950); Senate Bill No. 42, above, sec. 20(c); Mazza v. Cavicchia, above, 28 N.J. Super., at pages 284-285, and 15 N.J., at page 509; and, generally, 73 C.J.S., Public Administrative Bodies and Procedure, § 210, p. 569 ff. We are not persuaded that what was done here was "inconsistent with substantial justice."
It is further insisted, in the Neuls case, that the hearer erred when he refused to permit counsel for the licensee to ask the same witness whether he had ever been "involved in any other criminal indictments," and whether "the ABC Investigator had knowledge that you were being held for any criminal charge." Neither question was pertinent as to credibility, since the first did not call for disclosure of a conviction and, as to the second, whether the agent knew or did not know of any criminal charge was irrelevant and immaterial. Further, appellant fails to specify just what prejudice might have been visited upon him by the action taken by the hearer. Additionally, the reason now belatedly given us for these questions, namely, "to ascertain the motive or establish his reason for his testimony," was not disclosed to the hearer and thus no opportunity afforded to correct any alleged error. See R.R. 4:47. Accordingly, *510 appellant may not now object to the hearer's rulings. Cf. Burke v. Lincoln Transit Co., 37 N.J. Super. 433, 437 (App. Div. 1955).
Affirmed.